**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-60957-CIV-ROSENBAUM/HUNT**

ELIZABETH JENKINS,

       Plaintiff,

v.

GRANT THORNTON LLP, *et al.*,

       Defendants.

_____/

**OMNIBUS ORDER ON PLAINTIFF'S MOTIONS**

This matter is before the Court upon a review of various Motions filed by Plaintiff. The Court has reviewed the Motions, the filings in support and opposition, and the record and is otherwise fully advised in the premises. The Court will address each Motion in turn.

**1. Plaintiff's Motion in Alternative to Motion for Default Judgment; Plaintiff's Motion for Injunctive Relief and Stay of Discovery Pending Disposition [D.E.13]**

In this Motion, Plaintiff appears to seek by way of a default-judgment motion some of the relief she seeks in her Complaint. *Compare* D.E. 1, ¶¶ 93, 95 *with* D.E. 13, ¶¶ 3, 7. Specifically, Plaintiff asks the Court to compel Defendants to show why Plaintiff should not be paid, and, if they do not, force them to pay her. D.E. 13. While Rule 55, Fed. R. Civ. P., permits the Court to enter default judgments, the Court may do so only when a party "has failed to plead or otherwise defend." Here, however, Defendants have appeared and have filed a Motion to Dismiss. *See* D.E. 11. Accordingly, no basis exists to grant Plaintiff a default judgment.

1

Plaintiff also requests a stay of discovery. Defendants consent to a stay of discovery pending resolution of their Motion to Dismiss. Accordingly, discovery in this case is **STAYED** until the Court rules on the dismissal motion. Similarly, Plaintiff's three pending discovery motions, D.E. 34, D.E. 35, and D.E. 36, will be terminated without prejudice for Plaintiff to renew them when the discovery stay is lifted.

## 2. Plaintiff's Motion for a Declaratory Judgment Pertaining to No Restrictions on Disclosures or Discovery [D.E. 14]

In this motion, Plaintiff essentially seeks a premature blanket ruling on discovery-related privilege issues growing out of her former employment as a contract attorney for Defendants. D.E. 14. However, because the Court has stayed discovery in this case, the Court will **DENY** Plaintiff's motion without prejudice to renew if and when it becomes relevant during discovery.

## 3. Plaintiff's Construed Motion to Disqualify Counsel [D.E. 16]

Plaintiff claims that Defendants' counsel Jonathan G. Rose, Esq., and the law firm of Alston & Bird LLP, should be disqualified as counsel in this matter because, she asserts, they "performed services pertaining to ERISA claims administration in this matter, with and on behalf of Plaintiff and Defendants." D.E. 16, ¶ 1. According to Plaintiff, Rose did not disclose that he was adverse to Plaintiff and she believed he was representing her interests prior to this litigation. *Id.* ¶ 4. Plaintiff even claims that it is impossible for Rose to be adverse to her because, in essence, he is a "de facto ERISA fiduciary." *Id.* Additionally, Plaintiff asserts that Rose and Alston & Bird LLP are fact witnesses in this case and are precluded from being trial counsel because Plaintiff intends to introduce correspondence between them at trial. *Id.* ¶ 5.

Defendants dispute that Rose was ever retained by, or ever operated in a non-adverse posture to, Plaintiff because Rose was retained by Defendants only after Plaintiff threatened them with litigation concerning her ERISA-covered benefits.   D.E. 28.   Defendants provide the sworn declaration of Rose, who states, "At no point in time have I ever represented to Elizabeth Jenkins that I was her attorney, or that I was in any way performing legal services or providing legal advice to her," and adds that he was engaged by Defendants after Plaintiff repeatedly threatened litigation. D.E. 30-1, ¶ 4, 6.   Rose also asserts that he has never performed ERISA claims-administration services for Plaintiff.  *Id.* ¶ 5.

In support of his declaration, Rose attaches two pieces of correspondence from him to Plaintiff.  In the first, Rose advises Plaintiff that he "was just retained by Grant Thornton, LLP to assist in the resolution of the issues you have raised regarding your coverage." D.E. 30-2 at 2.  Rose also adds that "given my retention[,] all communications to Grant Thornton regarding any issue you may have relating to your coverage under the Plan should be directed to my attention at the above address or phone number."  *Id.*  Rose concludes the letter by noting the parties' shared desire to resolve the dispute without resort to litigation.  *Id.* at 4.  Rose's second letter appears to address a dispute between the parties over whether an individual was empowered to act on behalf of Plaintiff in this matter with or without an executed power of attorney.

Plaintiff responds to Rose's declaration and letters by stating that due to her "inexpert" position, she believed that Rose's statement that he was retained to assist in the resolution of the matter and his instruction that she direct correspondence to him indicated that Rose was not adverse to her, but rather, was retained to help her.  D.E. 33 at 2-3.  Plaintiff also contends that Rose's statement confirming that the parties desired to resolve the dispute without litigation means that Rose

was hired to act on her behalf.  *Id.* at 3.  According to Plaintiff, Rose's declaration is untruthful in light of this correspondence.

In her reply, Plaintiff also attaches another piece of correspondence from Rose, dated May 11, 2011, in which Rose discusses Defendants' concern that they are not dealing with someone duly authorized by Plaintiff to act on her behalf.  D.E. 33 at 16.  Also in this letter, Rose asks Plaintiff to submit correspondence with original signatures, or alternatively, to execute a power of attorney for her representative.  *Id.* at 16-17.  Attached to the letter was a form power-of-attorney document with Plaintiff's name and the grant-of-authority sections filled in.  *Id.* at 18-19.  Rose did, though, expressly advise Plaintiff to consult an attorney before executing a power of attorney.  *Id.* at 16-17.  Nonetheless, Plaintiff contends that Rose's "drafting" of this document demonstrates that an attorney-client relationship existed.  *Id.* at 5-6.

Florida's Rules of Professional Conduct prohibit a lawyer from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."  Fla. R. Prof'l Conduct 4-1.9(a).  To disqualify counsel on the basis of a Rule 4.19 violation, a party must first establish that a prior attorney-client relationship existed.  *See, e.g.*, *NCL Corp. v. Lone Star Bldg. Ctrs. (E.) Inc.*, 144 B.R. 170, 173-74 (S.D. Fla. 1992); *see generally Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 728 (11th Cir. 1988).  Disqualification of a party's counsel-of-choice "is an extraordinary measure."  *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001).  The party moving for disqualification bears the burden of establishing the grounds for disqualification.  *Id.*

Here, Plaintiff has failed to demonstrate the existence of a prior attorney-client relationship between her and Rose or Alston & Bird LLP.  Rose's correspondence clearly indicates that he was retained by Grant Thornton LLP.  D.E. 30-2 at 2.  Contrary to Plaintiff's assertions, Rose never said he was hired to "'assist' Plaintiff;" rather, he said he was hired to assist in the resolution of the issues raised by Plaintiff in her dispute with Defendants—just as any attorney is hired to assist in the resolution of his client's disputes.  The fact that Rose instructed that communications be directed to him does nothing more than show his compliance with common professional standards.  Finally, nothing about Rose's expression of a desire on the part of his client to resolve the dispute without litigation implies that a client relationship existed between Rose and Plaintiff.  To hold otherwise would mean that every attorney who engages in settlement negotiations becomes his opponent's attorney.

Nor does Rose's drafting of a power-of-attorney form demonstrate that an attorney -client relationship existed.  Rose expressly advised Plaintiff to consult an attorney concerning the issue. *See* D.E. 33 at 16-17.  At most, Rose's drafting of the form might represent an overzealousness in communicating with an unrepresented person,[1] but it does not satisfy Plaintiff's burden of establishing the existence of a client relationship.[2]

With regard to Plaintiff's claims that Rose and Alston & Bird LLP served as "claims administrators," Plaintiff has provided no evidence in support of her statement, and such a conclusion is contradicted by Rose's sworn declaration.  Moreover, Plaintiff offers no legal support

---

[1] "The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel."  Fla. R. Prof'l Conduct 4-4.3(a).

[2] While Plaintiff is proceeding *pro se* and has complained that, given her "inexpert" status, she was misled by Rose's correspondence, the Court notes that Plaintiff is an attorney herself.  *See* D.E. 1, ¶ 9.

for her argument that by representing an ERISA fiduciary a lawyer or law firm *becomes* an ERISA fiduciary. The mere provision of documents on behalf of his client, D.E. 33, ¶ 5, whether provided informally or in response to a formal discovery request, cannot change an attorney into an ERISA fiduciary. To the extent that the "fiduciary exception" to the attorney-client privilege is implicated at a later point in this case, *see Moore v. Metro. Life Ins. Co.*, 799 F. Supp. 2d 1290 (M.D. Ala. 2011), the Court will consider the issue in the context of the specific information sought at that time.

Finally, the complete disqualification of Rose and Alston & Bird LLP is not warranted based on the possibility that Rose may be called as a witness at trial. While Florida's professional-conduct rules generally prohibit an attorney from appearing as an advocate in a trial where he may be called as a witness, there are a number of exceptions to this rule. *See* Fla. R. Prof'l Conduct 4-3.7(a). At this juncture, Plaintiff has only suggested generally that she may introduce correspondence between her and Rose or Alston & Bird. D.E. 16, ¶ 5. Without more specifics concerning what Rose would be called to testify about, the Court cannot weigh whether any of the exceptions apply. Furthermore, as Defendants point out, even if Rose were called as a witness, another Alston & Bird attorney could act as trial counsel. *See* Fla. R. Prof'l Conduct 4-3.7(b). Therefore, Plaintiff's Construed Motion to Disqualify Counsel is denied.

**4. Plaintiff's Motion to Restrain Subrogation Regarding Grant Thornton LLP Health & Welfare Benefit Plan Medical & Pharmacy Features [D.E. 38]**

In this short and somewhat vague Motion, Plaintiff "requests the Court to restrain Defendants (including any Plan vendors) from asserting any subrogation or lien rights against Plaintiff." D.E. 38 at 2. However, to prevail on a motion for a temporary restraining order or a preliminary injunction, the movant must establish (1) a likelihood of success on the merits; (2) that irreparable

6

injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schaivo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11 th Cir. 2005). Plaintiff makes absolutely no attempt to demonstrate that any—let alone all—of the requirements for temporary injunctive relief are satisfied, nor can the Court discern from the motion that any of the requirements are met. Therefore, the Court **DENIES** this Motion.

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Motion in Alternative to Motion for Default Judgment; Plaintiff's Motion for Injunctive Relief and Stay of Discovery Pending Disposition [D.E.13] is **GRANTED IN PART** and **DENIED IN PART**. Discovery in this case is **STAYED** pending resolution of Defendants' Motion to Dismiss [D.E. 10]. All other relief sought in this Motion is denied.

2. Plaintiff's discovery motions, D.E. 34, D.E. 35, and D.E. 36, are **TERMINATED** without prejudice.

3. Plaintiff's Motion for a Declaratory Judgment Pertaining to No Restrictions on Disclosures or Discovery [D.E. 14] is **DENIED** without prejudice.

4. Plaintiff's Construed Motion to Disqualify Counsel [D.E. 16] is **DENIED**.

5. Plaintiff's Motion to Restrain Subrogation Regarding Grant Thornton LLP Health & Welfare Benefit Plan Medical & Pharmacy Features [D.E. 38] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 1st day of August 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record

Elizabeth Jenkins, *pro se*
413 Cameron Drive
Weston, FL 33326