**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan**

**ELIZABETH JENKINS**,

      Plaintiff,

vs.

**GRANT THORNTON LLP**, *et al.*,

      Defendants.

_____/

## ORDER

    **THIS CAUSE** came before the Court on Defendants, Grant Thornton LLP ("GT"), Lou Ann Hutchison ("Hutchison"), Stephen Chipman ("Chipman"), Grant Thornton LLP Health and Welfare Benefits Plan, and Grant Thornton LLP Employees Retirement Plan's (the "Pension Plan['s]") (collectively, "Defendants[']") Motion to Dismiss . . . ("Motion") [ECF No. 75], filed on April 7, 2014. Plaintiff, Elizabeth Jenkins ("Jenkins") filed a Response . . . ("Response") [ECF No. 77], and Defendants later filed their Reply . . . ("Reply") [ECF No. 79]. On May 30, 2014, the Clerk transferred the case to the undersigned (*see* [ECF No. 81]), and on June 12, 2014, the Court held a hearing ("June 12 Hearing") [ECF No. 92] on the Motion. This Order assumes the reader is familiar with the case and the orders of the predecessor judge, and consequently contains an abbreviated discussion of the issues and applicable law.

## I.  BACKGROUND

### A.  Procedural Background

    On April 24, 2013, Jenkins filed a Complaint [ECF No. 1] pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Jenkins alleges: (1) she is entitled to disability and pension benefits; (2) Defendants are liable for document penalties for failing to

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

provide ERISA-required documents; (3) Defendants are liable for "security breaches" in connection with her personal information; (4) Defendants breached fiduciary duties owed to her under ERISA; and (5) Defendants committed various errors in relation to her health benefits. (*See generally* Compl.).  On June 7, 2013, Defendants filed a Motion to Dismiss . . . ("Initial Motion") [ECF No. 11] the Complaint.  By Order dated March 5, 2014 ("March 5 Order") [ECF No. 66], the court granted in part the Initial Motion and dismissed Jenkins's breach-of-fiduciary duty, document-penalty, breach-of-security, and "additional" claims, and dismissed the Complaint as to Chipman.  (*See* March 5 Order 15–16).  On March 21, 2014, Jenkins submitted a 21-count Amended Complaint [ECF No. 69], which is the subject of the present Motion.  (*See generally* Am. Compl).

**B. Factual Summary**[1]

This matter arises out of the reduction of long-term disability ("LTD") payments paid to Jenkins, her access to benefit plan documents, her ability to access her Pension Plan funds, and alleged breaches of fiduciary duty by Defendants.  (*See generally* Am. Compl.).  Jenkins is a former employee of GT who sustained injuries from a serious automobile accident in November 2007 and became disabled.  (*See id.* ¶¶ 9, 15).  Jenkins enrolled in Plan 509, which she calls the "Omnibus Plan," in 2005; it was established in 2002.  (*See id.* ¶¶ 6, 6a).  Plan 509 is self-insured and has a stop loss policy for "many of the benefits including medical and pharmacy, short and long-term disability and basic life insurance."  (*Id.* ¶ 6d).  It hires vendors "to provide services such as a healthcare network, or administrative services as a Third Party Plan Administrator."  (*Id.*).  Some of the LTD benefits may be insured.  (*See id.*).

Jenkins alleges GT, Hutchison and Chipman are, pursuant to ERISA, fiduciaries of "the

---

[1] The allegations in the Amended Complaint are taken as true.

Plans." (*Id.* ¶¶ 4, 5a, 5b).[2]  Defendants Chipman and Hutchison are employees of GT, an Illinois limited liability partnership.  (*See id.* ¶¶ 4–5).  GT describes "Plan 501," which Jenkins terms the "LTD Only Plan," as Jenkins's plan.  (*See id.* ¶ 7).

The fiduciaries reported a Hartford Life & Accident Insurance Company ("Hartford") insurance policy, #675845G, was a policy of Plan 509 from 2008 to 2011.  (*See id.* ¶ 13 (citing Am. Compl. Ex. B [ECF No. 69-2])).  They also assert the same insurance policy is the sole asset of Plan 501.  (*See id.* (citations omitted)).  Jenkins alleges a "Booklet-Certificate" [ECF No. 24-2] provided by GT is a summary of the Hartford insurance policy, and GT claims the Booklet-Certificate is an ERISA-required plan document for Plan 501.  (*Id.* ¶ 14).

In November 2007, GT informed Jenkins Hartford would manage the LTD plan, but Hartford is a third-party administrator, not an insurer.  (*See id.* ¶ 15).  Although the cost of the plan decreased in November 2007, Jenkins learned from employees of GT "the LTD benefit was not being changed in any way other than the rate reduction."  (*Id.*).  After her injury, Jenkins received long-term disability payments, received the Booklet-Certificate in October 2008, and was advised her benefits were subject to its conditions.  (*See id.*).  Jenkins received disability payments at the rate of $90,000 per year in 2008, 2009, and the first four months of 2010, but received significant reductions in 2010 and 2011 partly as a result of a secret agreement between Hartford and GT.  (*See id.* (citation omitted)).

The Amended Complaint contains twenty-one claims for relief: eighteen separate counts based on violations of fiduciary duties pursuant to ERISA regarding long-term disability payments (*see* Am. Compl. ¶¶ 18–197); a claim based on medical benefit subrogation (*see id.* ¶¶ 198–208); a claim based on violations of ERISA in regard to the Pension Plan (*see id.* ¶¶ 209–

---

[2] The term "the Plans," although undefined in the Amended Complaint, presumably refers to the Pension Plan and Plan 509, which Jenkins alleges she is a participant of.  (*See* Am. Compl. ¶ 9).

46); and a claim based on the fiduciaries' failure to provide documents required by ERISA (*see id.* ¶¶ 247–61).   The eighteen counts based on violations of fiduciary duties incorporate a "Consolidated Statement of Harm to Omnibus Plan and Request for Relief for the Plan" (*id.* ¶¶ 183–89) and a "Consolidated Statement of Harm to Plaintiff RE: LTD and Request for Relief for the Plantiff [*sic*]" (*id.* ¶¶ 190–97b).   The former alleges the "Omnibus Plan and its Participants are damaged to an extent unknown and unquantifiable at this time" (*id.* ¶ 188) and seeks equitable relief (*see id.* ¶ 189); the latter alleges Jenkins suffered damages in the amount of unpaid LTD benefits and seeks equitable relief, including compelling the fiduciaries to direct the plan to pay Jenkins her LTD benefits (*see id.* ¶¶ 196–97b).

The Motion seeks dismissal of all counts for the failure to state claims for relief and dismissal on the ground Jenkins has not joined an indispensable party.  (*See generally* Mot.).

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6): Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a

plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### B. Rule 12(b)(7): Failure to Join an Indispensable Party

Rule 12(b)(7) allows a party to move for dismissal for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 requires the joinder of parties who are indispensable to the litigation and whose joinder does not divest the Court of subject-matter jurisdiction. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279–80 (11th Cir. 2003) (citations omitted). A party is considered indispensable to the litigation when "in that person's absence, the court cannot accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A).

### III.   ANALYSIS

Defendants argue (1) the Amended Complaint fails to state a claim for relief and should be dismissed; (2) Jenkins failed to join an indispensable party, requiring dismissal of certain counts; and (3) Jenkins should not be granted to leave to amend if dismissal is granted. (*See generally* Mot.) At the June 12 Hearing, the Court determined Defendants' arguments concerning dismissal of Count X on the basis of the statute of limitations (*see* Mot. 11–12), and Count XX on the basis of Jenkins's failure to exhaust her administrative remedies (*see id.* 18–20) failed. As such, the Court does not address these arguments in this Order. At the June 12 Hearing, the Court also determined Jenkins failed to state claims against Defendants Hutchison and Chipman. For the reasons stated in open court, the Amended Complaint is dismissed as to

Defendants Chipman and Hutchison.  The Court addresses the parties' remaining arguments in turn.[3]

### A.  Dismissal for Failure to State a Claim

#### 1.  Failure to Allege Harm — Counts I through XVIII

Defendants argue Counts I through XVIII, concerning long-term disability benefits, must be dismissed for failure to allege "any specific harm or damage caused by Defendants."  (Mot. 7 (citations omitted)).  In the "Consolidated Statement of Harm to Omnibus Plan," Jenkins alleges as a result of the fiduciaries' actions "the Omnibus Plan and its Participants are damaged to an extent unknown and unquantifiable at this time."  (Am. Compl. ¶ 188).  Defendants argue this statement is "vague and conclusory" and does not satisfy the pleading requirements (*see* Mot. 7 (citations omitted)), meaning Jenkins lacks standing to pursue her claim (*see id.* 8 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))).

"In the ERISA context, standing has both a constitutional and a statutory component.  To establish constitutional standing, a plaintiff must demonstrate that he suffered injury in fact."  *In re ING Groep, N.V. Erisa Litig.,* 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010) (citation omitted).  In an action alleging a violation of 29 U.S.C. sections 1132(a)(2) and (3) for breach of ERISA fiduciary duties, a plaintiff satisfies the constitutional standing requirement of "injury in fact" by alleging "an invasion of personal entitlements she holds as a participant in the Plan — the fiduciary duties of care, loyalty, and good faith."  *Almonor v. BankAtlantic Bancorp, Inc*., No. 07-61862-CIV, 2009 WL 8412125, *5 (S.D. Fla. July 15, 2009) (citations omitted).  An allegation fiduciaries with a duty to prudently and loyally manage a plan "fail[ed] to carry out that duty creates an injury-in-fact that is both concrete and specific, as well as traceable to them."

---

[3] By Order [ECF No. 93] entered June 12, 2014, the Court dismissed without prejudice the Amended Complaint as to Defendants John Does and Jane Roes, who have never been identified or served.

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

*Id.* (alteration added; citations omitted).  Statutory standing exists for a participant or beneficiary of a plan "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

Jenkins has both constitutional and statutory standing.  Jenkins alleges numerous losses to Plan 509 participants, including herself, from the alleged fiduciary breaches in the Amended Complaint.  (*See generally* Am. Compl.).  She lays out facts showing losses to participants by, for instance, alleging GT selected a policy that contravened Illinois law.  (*See id.* ¶ 87). Jenkins's allegation of a failure to comply with fiduciary duties sufficiently alleges a violation of her "personal entitlement[]" in the plan, thereby satisfying constitutional standing.  *Almonor*, 2009 WL 8412125, at *5 (alteration added; citations omitted).  She also satisfies the requirement of statutory standing, as she alleges "Defendants have breached their fiduciary duties, which were owed to her as an ERISA plan participant, and these breaches caused her to suffer losses." *Almonor*, 2009 WL 8412125, at *5 (citation omitted); *see also* 29 U.S.C. §§ 1132(a)(2), (3).

While Defendants argue Jenkins's allegations are "conclusory," they fail to articulate how the allegations do not show harm to the plan's participants.  "By its terms, ERISA requires that the alleged losses result from the breach. . . .  Rule 8 requires nothing more."  *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1183 (D. Minn. 2004) (alteration added; internal citations omitted) (holding plaintiffs in ERISA action properly alleged harm from breaches of fiduciary duty when securities lost value and reduced retirement plan balances). Defendants cite only two unpublished district court opinions, neither dealing with ERISA, in support of their argument the Amended Complaint's allegations are conclusory.  (*See* Mot. 7–8 (citations omitted)).  Defendants' standing arguments fail to persuade.

7

Defendants further claim the Amended Complaint is a "shotgun pleading" because it incorporates by reference the Consolidated Statement of Harm.  (Mot. 7).  Federal Rule of Civil Procedure 10(b) requires that the averments of a claim be made in "numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."  FED. R. CIV. P. 10(b) (alterations added).  A "shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996).

In contrast to the typical shotgun pleading, the Amended Complaint lays out separate theories for recovery in distinct counts and places the averments in numbered paragraphs.  (*See generally* Am. Compl.).  The counts do not incorporate by reference all allegations of the preceding paragraphs.  (*See id.*).  While Counts I through XVIII reference the Consolidated Statement of Harm, doing so does not result in a shotgun pleading but merely serves to save space in an already all-too long complaint.  The Amended Complaint contains separate, delineated counts with relevant factual allegations and legal theories, and therefore is not dismissed on the ground it is a shotgun pleading.

## 2.  Deficient Plan Documents — Counts I, II, and III.

Defendants argue Counts I, II, and III — alleging deficiencies in the plan documents — must be dismissed because Jenkins "fails to explain how the plan documents that govern the Plan are deficient."  (Mot. 4).  Defendants argue ERISA "does *not* dictate what constitutes a 'plan document.'"  (*Id.* 5 (emphasis in original)).  Regardless, they assert an insurance policy or contract qualifies as an ERISA-required "written instrument" under 29 U.S.C. section 1102(a)(1) when a plan's benefits are insured.  (*See id.* (citations omitted)).  According to Defendants, Jenkins's references to the Booklet-Certificate and attachment of portions of the LTD benefits insurance contract require dismissal of these counts.  (*See id.* 6 (citations omitted)).

According to 29 U.S.C. section 1102(a)(1), "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.  Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."  *Id.* § 1102(a)(1) (alteration added).  A "written instrument" is required in part "because the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan."  *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (citing 29 U.S.C. § 1001).  "The policy behind the 'written instrument' clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees."  *Cefalu v. B.F. Goodrich Co*., 871 F.2d 1290, 1296 (5th Cir. 1989) (holding ERISA precludes cause of action based on oral modifications to written benefit plan).

In Count I, Jenkins alleges Plan 509 lacks ERISA-compliant documents.  (*See* Am. Compl. ¶¶ 18–26).  She also states the documents Defendants provided — namely, the Booklet-Certificate — are for "Hartford fake Plan [] 501."  (Resp. 4 (alteration added)).  Because Jenkins

disputes the authenticity of the required ERISA plan documents, and plausibly alleges Plan 509 lacks the required documents, she states a claim for relief in Count I.

In Count III, Jenkins alleges Plan 501 — assuming it is the operative benefits plan — violates ERISA because it has no ERISA-compliant written instruments. (*See* Am. Compl. ¶¶ 39–51). She argues the Booklet-Certificate for Plan 501 is not an ERISA-compliant plan document because it indicates it is "not a governing document." (Resp. 4; *see also* Am. Compl. ¶¶ 43, 43(b–d)). The Booklet-Certificate states "a copy of the Plan is available for Your review . . . in the office of the Plan Administrator" (Booklet-Certificate 29 (alteration added)); and "[t]he benefits described in this booklet-certificate . . . are Provided under a group insurance policy. . . . The Policy is incorporated into, and forms *a part of*, the Plan" (*id.* 30 (alterations and emphasis added)). While Defendants argue, "[t]o the extent Plaintiff's allegations are contradicted by the plan documents, the plan documents govern" (Mot. 6 (alteration added)), they fail to explain how the documents attached to Jenkins's Amended Complaint "contradict[]" Jenkins's allegation the Booklet-Certificate is not the written instrument required by ERISA (*see id.* 4–6 (alteration added)). This ground for dismissal therefore fails.

In Count II, Jenkins alleges, "Changes were made to the Omnibus Plan [Plan 509] without following ERISA compliant Plan Amendment procedures" (Am. Compl. ¶ 31 (alteration added)), and "[t]he Fiduciaries also breached their Duty of Prudence in failing to have procedures and controls to prevent unauthorized changes to the Omnibus Plan and breached their Duty of Disclosure to Plan Participants" (*id.* ¶ 37) (alteration added). This Count is, at best, duplicative of Count I, which alleges Plan 509 "has no ERISA-compliant Plan Document." (Am. Compl. ¶ 22). As Jenkins herself notes in the Amended Complaint, "An ERISA compliant Plan Amendment can never be made to the Omnibus Plan because the Omnibus Plan has no

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

ERISA compliant Plan Document . . . ."  (Am. Compl. ¶ 29 (alteration added)).  Because Jenkins

asserts amendments could "never be made" (*id.*) and the failure to make proper amendments

constitutes the alleged breach (*see id.* ¶ 31), Count II does not state a plausible claim for relief

and is therefore dismissed.

### 3.  Count IV — Requirement of Plan Trust and Trustees

Defendants assert Count IV must be dismissed because assets of a plan consisting of

insurance contracts or insurance company-issued policies need not be held in trust.  (*See* Mot. 8

(citing 29 U.S.C. §§ 1103(b)(1), (2))).  Defendants argue Jenkins has "expressly acknowledged"

the LTD benefits were insured by Hartford.  (*Id.* 8–9).

The trust requirement of 29 U.S.C. section 1103(a) does not apply "(1) to any assets of a

plan which consist of insurance contracts or policies issued by an insurance company qualified to

do business in a State; [or] (2) to any assets of such an insurance company or any assets of a plan

which are held by such an insurance company."  *Id.* § 1103(b) (alteration added).  Count IV

concerns Plan 509 (*see* Am. Compl. ¶ 54), which Jenkins alleges "is a self-insured plan with a

stop loss policy for . . . short and long-term disability and basic life insurance" (*id.* ¶ 6d).  She

alleges Hartford managed the LTD plan but did not act as an insurer.  (*See id.* ¶ 15).  Defendants

provide no support for the argument Jenkins "expressly acknowledged" Plan 509 had been

insured.  (Mot. 8–9).  As the Amended Complaint's allegations directly contradict Defendants'

arguments, this ground for dismissal fails.

### 4.  Truthful Statements — Count V

Defendants assert Count V fails to state a claim for a violation of the exclusive benefit

rule based on allegations the fiduciaries made conflicting statements, some of which were false,

about the owner of the Hartford insurance policy #675845G.  (*See* Mot. 14–15).  Jenkins brings

11

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

this count under ERISA section 404(a)(1), 29 U.S.C. section 1104(a)(1). (*See* Am. Compl. ¶ 58). Under this provision, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan . . . ." 29 U.S.C. § 1104(a)(1) (alterations added).  The Eleventh Circuit has explained the exclusive benefit rule of 29 U.S.C. section 1103(c)(1), which mandates plan assets must be held exclusively for providing benefits to participants and defraying reasonable expenses, "can only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants." *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) (citation omitted).

Jenkins's allegations of a violation of section 1104(a)(1) fail to state a claim.  The alleged wrong (a discrepancy in the reported identity of the policyholder and owner of the Hartford insurance policy) does not logically suggest a benefit to anyone other than participants and their beneficiaries — which is the wrong the exclusive benefit rule targets.  As such, Count V is dismissed.

### 5. Prohibited Transactions — Counts VI and IX

Defendants argue Count VI must be dismissed because Jenkins fails to show Defendants engaged in a prohibited transaction through her allegation that GT "used the funds of the Omnibus Plan (and Employees' Elective Deferral payroll contributions) to purchase for itself Hartford insurance policy #675845G." (Mot. 15 (quoting Am. Compl. ¶ 68)).  Defendants argue there could be no benefit to GT through this transaction, and the Booklet-Certificate states LTD benefits extend to all full-time, active employees excluding partners and principals.  (*See id.* (citation omitted)).

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

Section 1106(a)(1) enumerates five specific actions between a plan and a party in interest a fiduciary is prohibited from performing. *See* 29 U.S.C. § 1106(a)(1). A "party in interest" includes any fiduciary of a plan or an employer whose employees are covered by a plan. *Id.* § 1002(14). Prohibited transactions under section 1106(a)(1) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (citation omitted). Jenkins makes no plausible allegation the election of the Hartford insurance policy was a transaction with insiders of the plan such that it would present a risk of plan underfunding. Nor does she plausibly allege how these actions would have benefitted the fiduciaries. Her allegations are insufficient to show the choice of the Hartford policy involved improper transactions between the plan and its fiduciaries. Therefore, Count VI is dismissed.

Defendants further argue Count IX must be dismissed because Jenkins makes conclusory allegations the "Fiduciaries secretly allowed Hartford to reduce payments to disabled Participants (including Plaintiff) and Hartford agreed to accept a reduced premium payment from GT for 2011" (Am. Compl. ¶ 99a), as well as allegations payments to Hartford were wasted because the policy was illegal under state law (*see id.* ¶ 101). To buttress this claim, Jenkins alleges commission and premium payments to Hartford fell sharply in 2011. (*See id.* ¶ 97). But this reduction could have been the result of any number of legal agreements between the parties, such as Defendants' decision to select a different insurance carrier. Therefore, as with Count VI, Jenkins fails to allege facts raising her claim of prohibited transactions to the requisite level of plausibility. *See Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The secret agreement is not plausibly alleged, and thus Count IX is dismissed.

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

### 6. **Booklet-Certificate Not Enforceable — Count VII**

In Count VII, Jenkins alleges the Fiduciaries breached the duty of prudence under 29 U.S.C. section 1104(a)(1) by paying plan assets to Hartford "without obtaining an enforceable written instrument duly executed under State law — The Policy — in return for the payments" (Am. Compl. ¶ 78), and by failing to determine whether the Booklet-Certificate was an appropriate investment for the plan and whether the Booklet-Certificate was "'The Policy'" (*id.* ¶ 79). Defendants argue these "allegations are completely nonsensical" (Mot. 16), because Jenkins attaches a copy of policy provisions for LTD benefits to her Amended Complaint (*see* Am. Compl. Ex. C 7 [ECF No. 69-3]), and alleges she received payment of LTD benefits (*see* Am. Compl. ¶ 15).

The "prudent man" standard of care requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting 29 U.S.C. § 1104(a)(1) (alteration added)). The selection of a plan with an unenforceable written instrument, and the choice of a poor investment for a plan, are factual allegations stating a claim for a violation of the duty to act as "a prudent man acting in a like capacity" under section 1104(a)(1). Defendants do not show Jenkins's allegations are conclusory or otherwise fail to state a claim for a violation of the fiduciaries' duty of prudence. Therefore, dismissal of Count VII on this ground is improper.

### 7. **Duty of Loyalty and Prudence in Purchasing Plan — Count VIII**

In Count VIII Jenkins alleges Defendants violated the duties of loyalty or prudence by selecting a policy with discretion-conferring language, illegal under Illinois state law. (*See* Am.

Compl. ¶ 85–87).  In support, Jenkins relies on *Curtis v. Hartford Life & Acc. Ins. Co*., No. 11 C 2448, 2012 WL 138608 (N.D. Ill. Jan. 18, 2012), and a 2005 Illinois regulation cited therein which reads, "No policy . . .  issued in this State, by a health carrier, to . . . pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract . . . ."  *Curtis*, 2012 WL 138608, at *2 (quoting 50 Ill. Admin. Code § 2001.3 (2010)) (alterations added).  Jenkins alleges the Booklet-Certificate and Hartford policy purport to reserve to Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy."  (Am. Compl. ¶ 85).  As Defendants acknowledge, Jenkins alleges the Booklet-Certificate's effective date was January 1, 2008, after the enactment of the Illinois regulation.  (*See* Mot. 17; Am. Compl. ¶ 87).  Jenkins thus plausibly alleges a violation of the duty of prudence or loyalty in the fiduciaries' selection of a plan that may have conflicted with Illinois law.  Count VIII is not dismissed.

### 8. Subrogation of Medical Benefits — Count XIX

In Count XIX, Jenkins alleges GT is the "ultimate recipient" of subrogated amounts of her medical benefits because Plan 509 is self-insured, but the plan is not permitted to assert a lien or subrogation rights as there is no plan document.  (Am. Compl. ¶¶ 203, 205).  She asserts a breach of fiduciary duty for failure to document Plan 509.  (*See id.* ¶ 204).  She also seeks equitable relief — namely, requiring the fiduciaries to provide her a release and waiver from liens or subrogation rights — under 29 U.S.C. section 1132(a)(3) because there is no plan document and thus no other relief is available to her.  (*See id.* ¶¶ 207–08).  Defendants insist this claim is vague and not ripe for adjudication.  (*See* Mot. 18).

The Court agrees with Defendants. Jenkins points to no provision of ERISA that concerns subrogation rights or liens, nor does she explain how Defendants' actions would breach fiduciary duties under ERISA. (*See* Resp. 8). Jenkins also fails to state a claim for equitable relief under section 1132(a)(3). Jenkins alleges, "On information and belief, Blue Florida . . . asserts a lien or subrogation right against Plaintiff." (Am. Compl. ¶ 202 (alteration added)). However, the Amended Complaint does not state an entity has "enforced" a lien or right of subrogation. Merely asserting a right of subrogation is insufficient to bring a claim under section 1132(a)(3). *See Cramer v. John Alden Life Ins. Co.*, 763 F. Supp. 2d 1196, 1213–14 (D. Mont. 2011) (holding in ERISA action "because the Defendants did not initiate any judicial proceedings, they did not 'enforce' a right of subrogation . . . . Because [Plaintiff] has not alleged any actionable conduct, she has failed to state a claim for equitable relief under § 1132(a)(3)" (alterations added; footnote call number omitted)). Therefore, Count XIX is dismissed.

### 9. Document Penalties — Count XXI

In Count XXI, Jenkins alleges Defendants failed to provide ERISA-required documentation upon her request. (*See* Amend. Compl. ¶¶ 247–61). Defendants argue this claim can only be brought against a "plan administrator," and even if Jenkins could identify the plan administrator at issue here, she fails to allege facts necessary to state a claim for relief. (Mot. 20–23).

Under 29 U.S.C. section 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." *Id.* § 1024(b)(4)

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

(alteration added).  This statutory provision is the only one Jenkins cites potentially relevant to her claim.[4]  A plaintiff seeking ERISA plan documents must provide the administrator "clear notice" of the types of documents sought.  *Kollman v. Hewitt Associates, LLC*, 487 F.3d 139, 145 (3d Cir. 2007) (noting "the United States Courts of Appeals for the Second, Fifth, Seventh, and Tenth Circuits have held that plaintiffs seeking documents under 29 U.S.C. § 1024(b)(4) must provide clear notice to the plan administrator of the information they desire" (citations omitted)).

Jenkins merely alleges she or her mother "made repeated requests for documents from the Fiduciaries" (Am. Compl. ¶ 248), and "made many requests, of many individuals and entities, over many years, for many documents" (*id.* ¶ 257).  She states Exhibit G to the Amended Complaint [ECF No. 69-7] contains copies of letters relevant to Count XXI.  (*See id.* ¶ 260).  From this exhibit, the Court discerns Jenkins's document requests included asking for a "copy of Policy GLT 675845 [and] any other documents" (Am. Compl. Ex. G 15 (alteration added)), in response to which Grant Thornton sent a copy of the policy (*see id.* 16).  Jenkins requested "any and all GT plan documents intended to comply with Code Section 125 requirements, as well as supplemental and ancillary documentation (e.g., agreements, notices, protocols, and procedures, etc.) and any and all ERISA required documentation" (*id.* 17), "ALL documents pertaining to the LTD benefit" (*id.* 23 (emphasis in original)), and specific documents from 2005 through the present, such as the "New Hire Benefit Information Handbook" from 2005 (*see id.* 25–26).  With regard to the broad requests for "any and all" ERISA documents, these requests do not provide clear notice to the administrator, and as such cannot be the basis for a claim of ERISA document penalties.  *See Kollman*, 487 F.3d at 145 (citations omitted).  With

---

[4] *See* Am. Compl. ¶¶ 247–61 (citing 29 U.S.C. § 1029 (establishing the format of required disclosures); *id.* §§ 1166(a)(1), (4) (requiring notice at time of start of coverage under plan or occurrence of qualifying event); *id.* § 1021(f) (requiring annual notice of a plan funding notice)).

regard to her more specific requests, Jenkins fails to allege she did not receive the precise documents in question or that the specific document was covered pursuant to 29 U.S.C. section 1024(b)(4). (*See* Am. Compl. ¶ 247–61). Therefore, Jenkins fails to state a cause of action for ERISA document penalties, and Count XXI is dismissed.

### B. Dismissal for Failure to Join an Indispensable Party

Defendants move to dismiss the Amended Complaint on the ground Jenkins seeks recovery of benefits under section 1132(a)(1)(B) but fails to join an indispensable party, Hartford. (*See* Mot. 12–13). Defendants assert Hartford is an indispensable party because Hartford "retains full discretion" to determine and adjust the amount of disability benefits to which Jenkins is entitled and Hartford alone "has the right to recover an overpayment" of disability benefits from the benefits plan participants. (Mot. 12–13). Defendants argue the Booklet-Certificate lays out these requirements and Jenkins has incorporated it into her Amended Complaint. (*See* Reply 6). Therefore, Defendants argue, Hartford is the only entity with the ability to provide the relief Jenkins seeks. (*See id.* 5).

Jenkins responds Hartford is not necessary because she "continues to dispute the authenticity of . . . [Plan 501] and continues to asset [sic] she is a Participant in a different plan [Plan 509]." (Resp. 2 (alterations added)). She also states Hartford was only a third-party administrator, not a plan administrator for purposes of an ERISA suit. (*See id.* 3). Jenkins further claims the Booklet-Certificate is not operative because it violates Illinois law by reserving in Hartford discretion to interpret its terms. (*See id.* 4). The Amended Complaint alleges "GT is a Fiduciary of the Plans because it is the . . . Plan Administrator within the meaning of ERISA . . . ." (Am. Compl. ¶ 4 (alterations added)).

"The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citations omitted) (affirming dismissal of claim against sole defendant insurer in part because benefits plan stated employer "is the Plan Administrator . . . with exclusive responsibility and complete discretionary authority to control the operation and administration of this Plan . . . and to resolve all interpretive, equitable, and other questions that shall arise in the operation of this Plan"). "Proof of who is the plan administrator may . . . come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir. 2001) (alteration added; citation omitted). "An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer." *Baker v. Big Star Div. of the Grand Union Co*., 893 F.2d 288, 290 (11th Cir. 1989) (citation omitted).

Although Jenkins references Hartford and attaches Hartford policy documents to her Amended Complaint, she claims Hartford acted as a "TPA [third-party administrator], not as an insurer" in its work with the benefits plans. (Am. Compl. ¶ 15 (alteration added)). Jenkins's allegations Hartford sent her the Booklet-Certificate — advising her she had to comply with it and her benefits were subject to its conditions — do not constitute a concession Hartford is a plan administrator. While Defendants claim Jenkins's allegation she "'began to receive payment of long-term disability benefits'" in April 2008 makes Hartford a necessary party (Mot. 13 (quoting Am. Compl. ¶ 15)), the immediately preceding sentence of the Amended Complaint weakens this argument: "*GT* put Plaintiff on extended leave, and *approved her claim* for long-term disability" (Am. Compl. ¶ 15 (emphases added)). Additionally, Jenkins alleges her

acceptance of payments from Hartford was the result of "false statements" the fiduciaries made about the governing plan documents. (*Id.* ¶¶ 49(b–d)).

Jenkins's factual allegations are clear: GT had the authority to control the plan, and Hartford acted as a third-party administrator at the fiduciary's request. Even if these allegations contradict the written documents Defendants cite, Jenkins has disputed the operative effect of those documents. Accordingly, Jenkins's allegations establish Hartford is not a necessary party. *See* Fed. R. Civ. P. 19. This ground for dismissal fails.

### C. Leave to Amend

Defendants argue the Amended Complaint should be dismissed with prejudice, as Jenkins already received an opportunity to re-plead her Complaint in the previous Order. (*See* Mot. 23–24). Jenkins seeks "an opportunity to amend" if the Court finds the Amended Complaint deficient. (Resp. 10).

Jenkins filed her Complaint in April 2013. (*See* [ECF No. 1]). The original deadline for joining parties or amending pleadings was August 6, 2013. (*See* [ECF No. 26]). The predecessor judge permitted Jenkins to re-plead by March 21, 2014, after her Complaint was dismissed in part. (*See* March 5 Order 16). The March 5 Order instructed Jenkins to "adequately explain which factual allegations support which claims for relief" if she chose to amend the Complaint. (*Id.* (citation omitted)). The March 5 Order warned, "Should Jenkins's amended complaint fail to satisfy the pleading standards, the Court will be unlikely to provide another opportunity to amend." (*Id.* 17).

"The U.S. Supreme Court has held that undue delay and futility are adequate bases for denying leave to amend." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (citation omitted). "[D]enial of leave to amend is justified by futility when the complaint as

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (alteration added; citation omitted). Denial of leave to amend on the basis of futility is reviewed for abuse of discretion, *see id.*, as is denial of leave to amend on the basis of undue delay, *see Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 494 (11th Cir. 1993).

Having determined Counts II, V, VI, IX, XIX, and XXI should be dismissed, the Court concludes it would be futile for Jenkins to re-plead these counts. Jenkins had multiple opportunities and nearly a year to compile her factual allegations from the time of first filing to the deadline for re-pleading, making any opportunity to re-plead the dismissed counts likely futile. If there are any additional supporting allegations she did not include in her Complaint or Amended Complaint, Jenkins unduly delayed in marshaling them, and will not receive additional time to do so. The dismissal of the claims is with prejudice.

## IV.    CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1.    Defendants' Motion **[ECF No. 75]** is **GRANTED in part** and **DENIED in part**.

2.    Counts II, V, VI, IX, XIX, and XXI of Plaintiff's Amended Complaint **[ECF No. 69]** are **DISMISSED with prejudice**.

3.    Plaintiff's Amended Complaint **[ECF No. 69]** is **DISMISSED with prejudice** as to Defendants Chipman and Hutchison.

4.    The parties are to furnish a joint status report containing updated discovery and pre-trial deadlines by **July 11, 2014**.

CASE NO. 13-60957-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of July, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record